**IN THE COURT OF APPEALS OF IOWA**

No. 24-1517
Filed December 4, 2024

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**A.M., Mother,**
    Appellant.
_____


Appeal from the Iowa District Court for Montgomery County, Justin R. Wyatt, Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Eric A. Checketts of Checketts Law, PLC, Glenwood, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Ivan Miller of Billings & Mensen, Red Oak, attorney and guardian ad litem for minor child.


Considered by Buller, P.J., Langholz, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**VOGEL, Senior Judge.**

After a seven-month-old baby died from injuries consistent with abuse, the baby's two-year-old sibling, A.H., was removed from the parents' custody. While A.H. was in foster care, the mother did not meaningfully work toward reunification. The mother forwent mental-health treatment, irregularly participated in family services, was discharged from substance-use treatment for noncompliance, and continued to test positive for methamphetamine and cocaine throughout the juvenile proceeding. The juvenile court ultimately terminated the mother's parental rights to now-four-year-old A.H. under Iowa Code section 232.116(1)(e) and (f) (2024). She appeals.[1]

On our review, the mother's ongoing drug use, inability to demonstrate she can safely parent her child, and failure to progress beyond fully supervised visits show the child could not have been returned to her custody at the time of the termination hearing. Thus, the State proved by clear and convincing evidence termination was warranted under section 232.116(1)(f). Because termination is also in the child's best interest and the mother has not shown that any statutory ground should impede termination, we affirm the juvenile court.

## I.  Factual Background and Proceedings.

In March 2023, while the mother was at work, A.H.'s seven-month-old sibling stopped breathing. Yet the father did not call 911 or otherwise seek help for nearly ten minutes. The baby was life-flighted to Nebraska, where he was diagnosed with subdural hematoma and a retinal hemorrhage—conditions

---

[1] The father's parental rights were also terminated in this proceeding, but he does not appeal.

consistent with physical abuse. The baby died a few days later from the injuries. A.H. was promptly removed from her mother's and father's custody and placed with a foster family, where she has remained ever since. The child was adjudicated in need of assistance in April.

After removal, the mother tested positive for methamphetamine and cocaine in July. She again tested positive for methamphetamine in August and September. During this time, the mother inconsistently attended family-services appointments and did not obtain a substance-use evaluation.

In October, the Iowa Department of Health and Human Services (HHS) and the child's guardian ad litem recommended the juvenile court alter the permanency goal from reunification to termination. The juvenile court disagreed, explaining the "case started with the death of a child. The grieving progress undoubtedly caused [the mother] to engage in services late in the case." The juvenile court gave the mother "an additional three months to demonstrate [she] can engage in, and make significant progress with, reunification services." Specifically, the mother was instructed to "consistently attend therapy, treatment, and family centered services."

Yet the mother did not use this extra time to work toward reunification. She stopped attending her mental-health appointments altogether. She never completed the SafeCare program—which provides training on how to safely care for young children—failing three of the four sections of the assessment after months of sporadic participation. Indeed, the mother never progressed beyond fully supervised visits with the child. As for her substance use, the mother was discharged from her treatment program for noncompliance. She tested positive for methamphetamine and cocaine in January 2024 and again for

methamphetamine in March and April.  As a result, the State moved to terminate the mother's parental rights.

After a one-day hearing in July, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (f).  In a thorough ruling, the juvenile court found the mother failed "to complete court-ordered services, provide consistently negative drug screens, and complete recommended substance use treatment," and thus "has made no reasonable efforts to resume care of the child despite being given additional time to reunify at the permanency hearing."  The juvenile court also found the child could not be returned to the mother's custody at the time of the hearing given her ongoing substance use and failure to show she can safely parent the child.  As for the child's best interests, the court concluded the child had been in foster care for fifteen months and "cannot wait for her parents to learn and consistently demonstrate effective parenting skills."  The court also found no permissive statutory grounds impeded termination. Finally, because termination was appropriate, it denied the mother's request for another extension of time to work toward reunification.

The mother now appeals.

## II.  Analysis.

Our statutory termination framework follows a three-step process.  Iowa Code § 232.116(1)–(3).  We must consider "(1) whether the State proved any grounds for termination, (2) whether termination is in the child's best interests, and (3) whether any exceptions save the parent–child relationship."  *In re W.T.*, 967

N.W.2d 315, 322 (Iowa 2021). We review the juvenile court's termination order de novo. *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015).

**A. Termination under Section 232.116(1)(f).**

When a parent's rights are terminated under multiple statutory grounds, we may affirm so long as one ground supports termination. *In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020). We will first consider whether the State proved by clear and convincing evidence that the mother's rights should be terminated under paragraph "f."

The mother does not challenge the first three elements of paragraph "f"— the child was over four years old, was adjudicated in need of assistance, and had been removed from her custody for fifteen straight months. *See* Iowa Code § 232.116(1)(f)(1)–(3). Instead, she only alleges the State failed to prove the child could not be returned to her custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4). She argues that all drug screens were false positives, she now resides in a supportive home with her grandmother, and that any lack of progress was caused by the State's failure to make reasonable efforts to reunify. We disagree.

Termination is appropriate if returning the child to the mother's custody would expose the child to "any harm amounting to a new child in need of assistance adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "[A] good prediction of the future conduct of a parent is to look at the past conduct." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). HHS offered many services to the mother and opportunities to improve her parenting, including family centered services, mental-health treatment, substance-use treatment, and SafeCare training. The

mother did not follow through with these resources. When asked during the hearing whether the child could be immediately returned to the mother, the HHS social worker explained the mother still tests positive for illegal substances, has made "no progress on her mental health," and could not pass three of the four sections of the SafeCare assessment.

The mother's denial of drug use is particularly troubling. She insists her frequent proximity to drug users caused her litany of positive test results, but she offers no evidence to support that assertion. Given that lack of accountability, we agree with the juvenile court that the mother would be unable to provide a safe and sober living environment for the child. Moreover, the mother never progressed beyond supervised visits, which further undermines immediately returning the child to her custody. *See In re L.H.*, ___ N.W.3d ___, ___, 2024 WL 3887255, at *1 (Iowa Ct. App. 2024) ("[The parent] never progressed beyond fully-supervised visits, which also prevented an immediate return of custody."). Accordingly, the State offered clear and convincing evidence to terminate the mother's parental rights under section 232.116(1)(f). Because that ground is adequately supported, we need not consider paragraph "e." *L.H.*, 949 N.W.2d at 270.

**B. Best Interest of the Child.**

The mother next argues that termination is contrary to the child's best interest. However, she conflates, as many parents do, the second and third steps of our framework, arguing that termination is not in the child's best interest because of the close bond between her and the child. *Compare* Iowa Code § 232.116(2) (discussing the child's best interest), *with id.* § 232.116(3)(c) (providing a

permissive impediment to termination when "the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship").

Even so, termination is in the child's best interest. The child was removed in March 2023 and has been in foster care ever since. "Children should not be made to suffer indefinitely in parentless limbo." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). Nor can the "crucial days of childhood [be] suspended while parents experiment with ways to face up to their own problems." *Id.* Our "full measure of patience" is only reserved for "parents who attempt to remedy a lack of parenting skills." *Id.* The mother has not meaningfully attempted to improve her parenting, sobriety, or mental health, even after the juvenile court gave her extra time. Because the time has come for permanency, we agree with the juvenile court that termination best serves the child.

### C. Statutory Impediment.

As for statutory impediments, the mother has not shown that the bond between her and the child should preclude termination. *See* Iowa Code § 232.116(3)(c). During the hearing, an HHS worker explained that when the child was not around the mother, she did not ask for the mother. Though we do not doubt the mother loves the child, the mere existence of a bond is not enough to forestall permanency. *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Under these facts, we agree with the juvenile court's ruling, which declined to forgo termination under section 232.116(3)(c). *See In re M.W.*, 876 N.W.2d 212, 215 (Iowa 2016) (declining to avoid termination due to a bond when young children had been

removed for nearly two years and the parent never "progressed beyond more than limited, supervised visits").

**AFFIRMED.**